Good morning. May it please the Court. My name is Jason Sirr. I'm a fellow Defender of San Diego, and I represent Mr. Anaya, the Appellant in this matter. The conviction in this case, we argue, must be reversed for several reasons. Specifically, it must be reversed because the District Court committed error by refusing to suppress statements elicited from Mr. Anaya subsequent to his arrest by the interrogating agents. The District Court's refusal to suppress statements elicited by the agents administered an ambiguous and confusing set of Miranda warnings to Mr. Anaya subsequent to his arrest. The agents informed Mr. Anaya that he had the right to an attorney. However, when they informed him that he had the right to the presence of an attorney, the agent administered an alternative set of warnings. According to the agent, Mr. Anaya had the right to either have counsel present or have counsel present during the questioning. Mr. Anaya refused by telling him he would appear before a magistrate court the next day and that he would be appointed an attorney at that time. Those warnings were ambiguous because they negate the inference that Mr. Anaya had that he had the right to have counsel who was appointed present during the questioning. And because that is ambiguous, the Miranda warnings were improperly administered and the Mr. Anaya appeared a little shaky or seemed concerned, and didn't the officer then search the car and he did find the drugs, and didn't Mr. Anaya agree the amount of drugs were there? In other words, he told him he agreed what the amount was? At the border? Yes, sir. No, he did not. I don't think he agreed with the agent at the border whatsoever. When he came to the… Did he tell the agent not to search the car? No, he did not object to the search of the car. So, he did not object to the search of the car, primarily because, obviously, he cannot. There are no Fourth Amendment rights at the port. He could not. Even if he had objected, a reasonable search could have taken place. The primary inspector at the port of entry that day did do a seven-point inspection of the car, but nothing in the car seemed out of the ordinary until he got to the trunk, according to the primary agent's testimony. But didn't he seem a little bit shaky to the border patrol or his voice was shaky, but otherwise everything else was fine. The car did not smell of marijuana. In fact, Mr. Anaya had identification and car registration in hand, prepared to provide to the officer. The car belonged to his mother. He had all the proper registration documents. The car wasn't out of sorts with regards to being legally, you know, documented in that manner. If Your Honor is, I guess, referring to whether this is a harmless error issue or not, I would submit that this case isn't one of those where harmless error would be appropriate. If you compare it to other cases out of this circuit, such as Foster, San Juan Cruz, particularly Foster, where this court went quite far in saying that it wasn't harmless error to admit statements in a border bus case where the car smelled of fabric softener, which the court noted was commonly used to mask the scent of drugs, where there were many other factors present, such as the individual in that case having clothing that was baggy, that didn't fit him, that really stood out. The defendant, I believe, in that case was also very nervous. There was no license plate on this. There was no license plate on the car in Foster. There were many more things in Foster. There was no license plate in this car. Yes, there was. There were license plates on this car. It was properly registered and documented to his mother. It was his mother's car and he had I think when you compare this to other cases where harmless error analysis is undertaken, it certainly wouldn't give rise to, you know, an affirmance of the conviction on that basis. Being the mere driver of a car, in addition, simply isn't enough as well. I think if you compare this case, aside from that issue, to cases like Velarde Gomez, where their His mother sent him in this car and he didn't know anything about the drugs that was hidden in the tire. Well, his mother didn't send him. He went to Mexico. He indicated the primary. He was going to Mexico to visit a grandmother. And then during the interrogation, he made statements that he'd gone to Mexico also to work a roofing job while he was down there. Those statements aren't necessarily inconsistent. And the government, in its closing argument in this case, sees primarily, if not entirely, on the inconsistency or what the government believed was inconsistent statements in this case to argue knowledge. And the government specifically argued to the jury that people who are not smuggling contraband have no reason to be inconsistent. So they shaped these statements not into statements that were different, but that were entirely inconsistent. And I don't think they're inconsistent. But I think what this Court has to do in determining whether or not there's harmless error is determining in the absence of those statements whether the other evidence would be sufficient for the jury to find beyond a reasonable doubt guilt. And the government bears the burden in proving that. And I don't think they can sustain that burden. Absent the statements that were elicited by the agent, there is no direct evidence, even with those statements, there's no direct evidence of knowledge in this case. And that's the problem. The statements that were admitted were prejudicial, very prejudicial, because, as Your Honor is well aware after reviewing the transcripts, this is what the government argued. And according to the government, the statements were, quote, an unexplained inconsistency that is suspicious. And the government argued he must have known that the marijuana was in the car because of these inconsistent statements. Excuse me. There is not overwhelming evidence of guilt in this case. And Your Honors aren't precluded from reversing the conviction on this basis by any means. The government cannot sustain its burden. I'd like to go back to the first part of the argument, and that is whether there's a Miranda violation in the first place. Wasn't your client given a preprinted form that covered Miranda pretty completely? He was. And he signed or initialed that form? He did. So where's the problem? Well, the question for Your Honors isn't what that form only said. The question is, under cases like San Juan Cruz and Connell, it's whether the wording or combination of words, whether on a preprinted form or in conjunction with the preprinted form and words uttered by the agent during review of that form, whether those as a whole clearly convey the rights under Miranda to Mr. Anaya. And they don't in this case. The Court has never said, and I think cases like San Juan Cruz or Connell are perfect on this point, and in particular Connell. And Connell, I believe it's Connell. Well, Connell said may. A lawyer may be appointed.  There's not such ambiguity in the form here. Right. But in Connell, the defendant also read the form. But nevertheless, the Ninth Circuit still held in the end that there was a Miranda violation. And merely reading the form or the defendants having read the form didn't vitiate any sort of error in relaying those rights to the defendant. In fact, you know, in addition to reading the form, he told him that one may be appointed. And that was said to him. And that's similar to what occurred in this case. While he may have been reading the form, when the agent got to the part about having an attorney present and he specifically says that he, in response to Judge Moskowitz's inquiry, he says that he advised him about going to the magistrate court the next day and getting an attorney at that time, when, and I'll quote him, when I read going through his Miranda form and it says, you know, you can have an attorney present or appointed to you if you can't afford one. And that's at page 192. And the inference that comes from that is, well, if you're Mr. Anaya and you're sitting there, you're not sure whether or not you're going to get an appointed attorney until the next day. And when he says … Well, it probably wasn't, was it? I mean, it's unlikely they're going to show up with an attorney on the spot. What happens is you don't get questioned. Right. But the issue in this case is whether or not those warnings reasonably convey to Mr. Anaya the belief that you can have an appointed attorney present before and during questioning. Well, the agent never said anything about questioning. I don't think there was anything inaccurate in what the agent said. And that's why, I guess, why I don't understand why this fits under the case law where there is something potentially inaccurate. If somebody said he may be appointed, it suggests that maybe he won't be appointed. Here he's just relating what practically happens. You don't get an attorney sitting here. There's no attorney ready to pop out of the closet. You get it the next day when you show up in court. So if you don't answer the questions, you don't have to respond to any questions. I would disagree with whether or not it clearly conveys the rights to Mr. Anaya. And I'm sure Your Honor is referring to Duckworth v. Egan in this sense. And I think this case is distinguishable from Duckworth v. Egan when the Supreme Court upheld the if and when language. Because the Supreme Court there held that, as a whole, the warnings properly advised the defendant as to his rights. And that the explanation about when you would be given or appointed an attorney really anticipated the question about when you would get one. And that there was no question that before advising the defendant in Duckworth of that right, he had previously been told that you have the right to an attorney appointed to be present during any questioning. But the court in Duckworth was careful to distinguish those facts from the facts that I believe are present in this case and that it was concerned about in Prysock. And that is, did the warnings fail to inform a defendant of his right to have an appointed attorney present if he chooses to answer questions? And that's the problem here because the warning to Mr. Anaya was vague because it suggested a limitation on his right to the presence of a lawyer during the questioning. And the advice that was given was given in the alternative. Either you have an attorney present or you can have one appointed. But based on the statements by the agent at that same time, the appointment wouldn't occur until the next day. So Mr. Anaya could either answer questions now or answer questions now and get an attorney later. But if he wanted an attorney present when he answered questions, he'd have to pay for one. It wasn't clear that he could have an appointed attorney present. And that's what I think distinguishes this case from the scenario Your Honor is proposing, which I think is similar to Duckworth. But I don't think it's dispositive here. I certainly don't think it defeats the claim that the Miranda warnings were somehow vague or ambiguous. And that's the concern because in Duckworth, the if and when language followed the entire recitation of Miranda. I'm not saying a mere recitation is sufficient. But in this case, the explanation about going to the magistrate court and getting an attorney the next day occurred at the exact same time he explained to him about the right to the presence of an attorney. And that's what made it vague. Thank you, counsel. You've said more than enough. Thank you, Your Honor. Good morning. May it please the Court. My name is Rolando Gutierrez on behalf of the United States. I would at the outset like to state, just to make some corrections, there were no plates on that car. I thought maybe I was mistaken about that. On the excerpts of Record 238, there were dealer plates, so there was no actual plate. And with regard to other observations made at primary, starting at ER 240, he had watery eyes, a distinct strange stare, gripping the steering wheel tightly, had his registration ready to go, which to the inspector was unusual. And at 245, his hands were shaking when he gave the keys. So there was indicia of knowledge above and beyond any statements that were ultimately given. And I will state that the statements were, in fact, self-serving statements because he never admitted knowledge. What he did do was deny knowledge, and it was actually consistent between two stories that the government used in part with the nervousness and the commercial value of the quantity of marijuana that was found in that vehicle. There was a statement in the defendant's brief, the appellant's brief, where it said that the government's argument was pure misdirection and completely misstates the state of the record. I'd like to address that if I could because the appellant did not cite this court to ER 200, where after the questioning, where counsel stated, did you at all ask these sorts of questions? It seemed a little vague at that point that twice, on no fewer than two occasions did the district court seek to clarify the record. And finally, on ER 200, in response, the court says, I think he said it during the interview. Later, the judge says, did you tell him that during the Miranda warnings or during the interview where they were talking about what happened? And the witness said, I said that during the interview. But during the Miranda warnings as item, it was like maybe the third or fourth right. It said that you will be appointed counsel. Clearly there, the agent's talking about the Miranda form that was used to inform him of his rights. And he goes on to say, I didn't say anything about MCC, which is the jail facility, or talking to a judge during the Mirandizing. It was during the interview. That was the last clarification the district court attempted to make, and that was the last response the agent gave with regard to that. We have a series of questions, which as cited by the appellant, there's no temporal reference. He was informed that there were drugs found in his car before Miranda. But then one asked, did you at all tell him these other things? There was no strict temporal reference, and even the district court was unclear at that point in time. The district court made several inquiries about what exactly was said. Ultimately, at ER 200, the agent is clear. He did not do it during the Miranda. And as such, since it happened after the Miranda advisal and waiver, it cannot therefore, after the fact, render that advisal ambiguous, because as the court has pointed out, he signed and initialed each and every right that he said he understood before he initialed. And in fact, more importantly, after 20 minutes of an interview, when the inconsistencies were being raised in his story, he asserted those rights, which counsel now claims were ambiguous, by ceasing and halting the interview. That request to halt the interview was respected by the agents, and it didn't go any further. So did he understand his rights? Yes, because he asserted those very same rights 20 minutes after the interview started. I don't know if the court has any more specific questions with regard to the fourth minute issue. The government's position is that, temporarily, as is made clear by the record specifically on ER 200, the subsequent inquiries by the defendant happened after the advisal, not during. And that was made clear in the record. With regard to the fourth minute issue, I can raise some issues there, but as the court knows, in the case of Cortez Rocha, recently decided that this situation is almost analogous to the facts in that case, except these facts are even better for the government, if you will. The tire in the back of the trunk was not even a car tire. It was a truck tire. The car required four lug nuts. That tire had holes for five lug nuts. So, as talked about in Cortez Rocha, that tire in the back of Mr. Anaya's car was nothing more than a suitcase, analogous to a suitcase with marijuana, because it didn't even belong there. So any expectation or anxiety Anaya would have with that being cut into wouldn't really be true, because it wouldn't have worked on him. It wouldn't have worked on his car anyway, and therefore no anxiety or no particularly offensive conduct in the government would have been seen to have from the cutting of that tire. And, by the way, even if reasonable suspicion was required to cut that tire, as you heard in the testimony, the primary inspector. Did the inspector who made the decision to cut the tire say that there was a difference in the number of lug nuts and that it was a truck tire? That came out in closing argument. But counsel argued that actually at ER. Yeah, but that wasn't what caused the inspector to decide to cut the tire. She didn't even either didn't observe that or didn't know it. That's true. But what they did know beforehand. The reason that she gave was that the tire was heavy and it failed the tap test. That's correct. That was observed in primary and secondary. But I wanted to say for the court that the record does have indication that tire didn't even belong to that car. And that is in the record. But whether it doesn't. But if the inspector didn't realize that she didn't have that kind of suspicion. I mean, I might not know if I looked at a tire, whether it belonged with a car, and it might not. But this inspector didn't that apparently didn't observe that or didn't notice it. My understanding, she observed that it was unusually large, heavy, and it failed the tap test. That is correct. But as far as this court's analysis on whether or not this tire was, in fact, part of that car, it wasn't after the fact. So the fact that it wouldn't fit this car may operate differently on the two questions. It may not add to the reasonable suspicion calculus because the inspector may not have realized that and hence can't claim that was part of what justified the cutting in based on reasonable suspicion. But it may yet speak to the issue of whether this is a part of the car that affects safety and so forth in terms of balancing the interests as discussed in Cortez. And I certainly could have been more clear in that aspect. That was the point I was trying to get across with regard to the Fourth Amendment analysis, whether she had reasonable suspicion. We don't concede that it's required, but we do believe it was determined in primary and secondary that the tire was unusually heavy and it was failing the tap test. I'm prepared to submit it on the matter. Thank you. I was hoping you'd explain the sentencing decision to us, but I guess that's a little much to hope under the circumstances since we're all going to spend the day reading it. Well, there is a sentencing issue here, right? And you've argued that there shouldn't be a sentencing issue here because the amount of marijuana is stipulated to. Yeah. As a decision, Blake, they've said that it has to be presented to a jury or admitted by the defendant here. We have a clear stipulation. That was never an issue that was central to the trial or an issue raised by the defendant to lack of the fact, but there was a clear stipulation on the record. No, I don't really expect an answer to the question because I've just read the syllabus so far, but we have a decision from the Supreme Court today. I don't know if you've had a chance to look at it. Do you have anything to say about this case under that decision? I was the first up. I know I went over my time, but if I could just briefly address one minor point with regard to the Miranda issue. Government counsel argues that the testimony was clear about when the discussion occurred about going to the MCC and going to the court. There are a couple problems with that. One, the agent was in the courtroom, and I noted that in my arguments. He was in the courtroom when I made my arguments regarding the reason and the basis for the suppression. And the judge's first two questions, he received responses that I explained to him, to Mr. Anai about going to the MCC and getting an attorney appointed by the magistrate the next day. He said to Judge Moskowitz, I did that while I was going through the Miranda form. His memory maybe fades over time, so at best I think the record is ambiguous about the warnings that were administered. And if it's ambiguous, I don't think the government is capable of meeting the heavy burden it has to meet in this case to demonstrate the propriety of the Miranda warnings. I think the agent may have begun to understand the argument that was being made and realized that maybe he did something wrong. With regard to the Fourth Amendment issue, and I didn't anticipate much argument on this given Cortez Rocha, I would submit that Flores-Montano, the Supreme Court decision, does away with all balancing tests. Flores-Montano now makes the primary inquiry one of destructiveness and destructiveness only. And this Court has recognized that there are no more balancing tests that can be used in determining whether or not a search requires reasonable suspicion at the border. Because Flores-Montano says, look, if it's destructive, it requires reasonable suspicion potentially. It didn't rule on that exact issue. Cortez Rocha obviously did. But we would submit that Cortez Rocha goes too far and it doesn't stay within the bounds of Flores-Montano in that it now goes into this balancing test about the operational safety of a vehicle. We would submit that a spare tire is a very important component of a vehicle. And in this case, Mr. Anaya made statements which we're looking to have suppressed, obviously, reversed it and have suppressed, that he had suffered a flat tire in Mexico. So a spare tire in that case would be very important. Now, obviously, as Joe said, A spare tire wouldn't, though. What? A spare tire doesn't fit his car. Well, there was no testimony by the agent. You pointed out correctly that that wasn't the reason. That certainly wasn't the government's basis for arguing reasonable suspicion existed then. It only appears now. And I don't think it's accurate. Your Honor, it points out. I agree. I don't think it can justify what the agent did based on reasonable suspicion. But in terms of whether the car is affected, it may yet be a factor. If it's nonoperative, then the desire or the need to protect it may not be the same as if it were a useful spare tire. And that, again, assumes that the balancing test employed by Cortez Rocha is proper, which we submit it isn't based on Flores-Montano. Right. And I'm sure a petition for rehearing has or will be filed, and so we all have to wait. But for us now, that's where we are. I just wanted to point that out. Thank you, Your Honor. Thank you, Counsel. The case just argued will be submitted. Now we'll return to the top of the calendar. We have two cases. We'll take an order. First one is Victor Manuel Lucille v. Roe. Counsel, in these two cases, we have the same legal issue. The facts are different. Yes, Your Honor.
judges: Reinhardt, Clifton, Weiner